1  JOHN N. TEDFORD, IV (State Bar No. 205537)
   *jtedford@DanningGill.com*
2  AARON E. DE LEEST (State Bar No. 216832)
   *adeleest@DanningGill.com*
3  DANNING, GILL, ISRAEL & KRASNOFF, LLP
   1901 Avenue of the Stars, Suite 450
4  Los Angeles, California 90067-6006
   Telephone: (310) 277-0077
5  Facsimile: (310) 277-5735

6  Proposed Attorneys for Better Nutritionals, LLC,
   Debtor and Debtor in Possession

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## RIVERSIDE DIVISION

| In re | Case No. 6:22-bk-14723-RB |
|---|---|
| BETTER NUTRITIONALS, LLC, | Chapter 11 |
| Debtor and Debtor in Possession. | **NOTICE OF MOTION AND MOTION FOR ENTRY OF ORDER (1) AUTHORIZING USE OF CASH COLLATERAL ON AN INTERIM BASIS PENDING A FINAL HEARING, (2) SCHEDULING A FINAL HEARING ON THE DEBTOR'S REQUEST FOR AUTHORITY TO USE CASH COLLATERAL THROUGH MARCH 31, 2023, AND (3) GRANTING RELATED RELIEF; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| | Date:   [*See notice of hearing*]<br>Time:  [*See notice of hearing*]<br>Place:  [*See notice of hearing*] |

1687195.3  27094

**PLEASE TAKE NOTICE** that at a date, time and place to be set by the United States Bankruptcy Court for the Central District of California, Riverside Division,[1] Better Nutritionals, LLC, a California limited liability company (the "**Debtor**"), will and does hereby move on an expedited basis, authorized by Local Bankruptcy Rule 2081-1, for an order (1) authorizing the Debtor to use cash collateral on an interim basis pending a final hearing, (2) scheduling a hearing to consider the Debtor's request for authority to use cash collateral through March 31, 2023, and (3) granting related relief.  The Debtor's proposed order granting this motion is attached as Exhibit "A" hereto.

This motion is based on the following grounds:  The Debtor is a state-of-the-art contract manufacturer and R&D leader in nutritional supplements.  On December 20, 2022 (the "**Petition Date**"), the Debtor filed a petition for relief under chapter 11 of title 11 of the United States Code.

In the ordinary course of its business, the Debtor uses cash on hand and the proceeds of sales of inventory to operate its business and pay its employees.  The Debtor needs to continue to use cash on hand, and monies generated from receivables and inventory, to preserve its assets and ongoing business operations.

The Debtor believes that there are three parties that have or may have security interests in "cash collateral" (as that term is defined in the Code):  Aramark Services, Inc. ("**Aramark**"); Suitable Staffing Solutions ("**Suitable Staffing**"); and insiders Sharon and Odelya Hoffman (the "**Hoffmans**") (collectively the "**Secured Parties**").  Pursuant to a settlement agreement entered into within 90 days before the Petition Date, Aramark has a security interest in substantially all of the Debtor's assets.  Pursuant to a judgment lien filed by Suitable Staffing within 90 days before the Petition Date, Suitable Staffing has a security interest in assets described in California Code of Civil Procedure § 697.530 (including accounts receivable and inventory).  Finally, shortly before the Petition Date, the Hoffmans loaned the Debtor money needed to commence this case, and as

---

[1] The date, time, and method of appearing at the hearing are identified in a notice of hearing filed and served concurrently herewith.  Due to Covid-related protocols, in-person appearances may not be permitted.  Please see the Court's website, www.cacb.uscourts.gov, for the presiding judge's procedures for appearing at the hearing.

part of the loan transaction received a security interest in substantially all of the Debtor's assets. The aggregate amount owed to the Secured Parties is approximately $4.3 million, which is far less than the value of the assets in which the Secured Parties have interests.

Exhibit "1" to the Declaration of Sharon Hoffman is an interim weekly projection of revenues and expenses through March 2023. The Debtor proposes to use cash collateral as set forth in that exhibit, with up to a 10% cumulative variance, through March 2023.

Although the Debtor believes that the Secured Parties are adequately protected by their interests in non-"cash collateral" assets, the Debtor is proposing to grant the Secured Parties a replacement lien on all of the estate's assets, excluding avoiding power claims and recoveries, to the extent that the Debtor's use of cash collateral results in a decrease in the value of such party's interest in cash collateral. The Debtor believes that the replacement lien, especially together with the existing liens and the Debtor's continued operation of its business, will adequately protect the Secured Parties from any possible diminution in value of the cash collateral in which they have or may have an interest.

The Debtor is requesting that the Court enter an order substantially in the form of the order attached as Exhibit "A" hereto, authorizing the Debtor to use cash collateral on an interim basis pending a hearing on the Debtor's request for authority to use cash collateral on a final basis. At the final hearing, the Debtor will request authority to use cash collateral through March 2023. The Debtor is requesting that the hearing on final approval be set during the week of January 23, 2022, with any opposition to the Debtor's request to be filed no later than 14 calendar days before the hearing.

This motion is based upon this notice and motion, the Memorandum of Points and Authorities appended hereto, the separate Declaration of Sharon Hoffman and exhibits thereto, the separate notice of the hearing on this and other first day motions, the *Statement Regarding Cash Collateral or Debtor in Possession Financing* filed pursuant to Local Bankruptcy Rule 4001-2(a), and such other evidence as may be presented to the Court.

**PLEASE TAKE FURTHER NOTICE** that this motion is being presented to the Court pursuant to the procedures set forth in Local Bankruptcy Rules 2081-1 and 9075-1, and notice of

1  the motion and hearing is being given in accordance with instructions given by the Court pursuant

2  to Local Bankruptcy Rule 9075-1(a)(2)-(3).  Please see the separate notice of hearing regarding the

3  deadline (if any) for filing any opposition or other response to this motion.  If you do not have any

4  objection to this motion, you need not take any further action.

6  DATED:  December 20, 2022          DANNING, GILL, ISRAEL & KRASNOFF, LLP

8
                                    By:      */s/ Aaron E. de Leest*
9                                         AARON E. DE LEEST
                                          Proposed Attorneys for Better Nutritionals, LLC.
10                                        Debtor and Debtor in Possession

1687195.3  27094                              3

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## BACKGROUND FACTS

**A.    BANKRUPTCY BACKGROUND**

On December 20, 2022 (the "**Petition Date**"), Better Nutritionals, LLC (the "**Debtor**"), filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "**Code**").  The Debtor remains in possession of its property and continues to operate its business as a debtor in possession pursuant to sections 1107(a) and 1108 of the Code.  The Debtor has filed a number of motions seeking typical "first day" orders.

**B.    THE DEBTOR'S HISTORY AND BUSINESS OPERATIONS**

The Debtor is a state-of-the-art contract manufacturer and R&D leader in nutritional supplements.  The Debtor specializes in making cutting-edge formulations of gummy supplements focused on personal health and wellness.  The Debtor's output capacity currently is about nine billion gummies per year.  It is an FDA-registered manufacturer, and meets stringent standards to label its products as vegan, Kosher-certified, and free of top-8 allergens and gluten.

The Debtor's headquarters is located at 3390 Horseless Carriage Drive, Norco, California.  Its four-building campus in Norco contains approximately 422,000 square feet of manufacturing, warehouse, R&D and office space.  The Debtor also manufactures products in an 18,000 square foot facility in Gardena, where it was headquartered until 2021.

The Debtor grew significantly from 2019 through 2021.  Sales revenues increased from $21.8 million in 2019 to $222.8 million in 2021.  However, for the twelve months that ended on September 30, 2022, revenues were down and expenses were up, leading to a net loss during that 12-month period of about $45 million.

The dramatic decrease in revenues and increase in expenses was the result of a series of wrongful acts by a Canadian entity, 12416913 Canada, Inc. ("**12416913 Canada**"), and certain persons and entities affiliated with that entity.  12416913 Canada is affiliated with the owners of

1  Goli Nutrition, Inc., a Delaware corporation ("**Goli Delaware**"), which is a subsidiary of Goli

2  Nutrition, Inc., a Canadian corporation ("**Goli Canada**").  12416916 Canada, Goli Delaware, and

3  Goli Canada are hereinafter referred to herein as "**Goli**."

4       As discussed in the accompanying Declaration of Sharon Hoffman and the Debtor's

5  recently-filed complaint attached as Exhibit "3" thereto, the Debtor aggressively embarked on an

6  expansion of its operations, and incurred substantial debt to trade creditors, building contractors,

7  vendors, and other parties, in reliance on Goli's express representations and promises that it would

8  significantly increase the amount of its purchases from the Debtor if the Debtor took the significant

9  steps needed to supply that capacity.  However, at some point in 2021, while representing that it

10 needed more products – causing the Debtor to make the products to satisfy Goli's requests – Goli

11 took delivery of and paid for only a fraction of what the Debtor made.  Goli also refused to allow

12 the Debtor to release the products Goli ordered so the Debtor could sell the products to others.  The

13 Debtor now understands that Goli was attempting to induce a private equity firm to invest in Goli,

14 and used the inflated purchase orders as part of its efforts to obtain money from investors, but did

15 not intend to honor its commitment to the Debtor.

16      The Debtor has attempted to adjust its business model by, among other things, developing

17 relationships with new clients.  In mid-2021, over 90% of the Debtor's monthly sales volume was

18 to Goli.  That percentage has declined to 50% to 75%, and the Debtor is developing relationships

19 with new customers, including some Fortune 100 customers.

20      Unfortunately, the increase in revenues from non-Goli customers has not been adequate to

21 dig the Debtor out of the deep hole caused by Goli.  The Debtor's accounts payable exceed $55

22 million.  Creditors include suppliers of goods, ingredients, equipment, employees and services used

23 by the Debtor in the ordinary course of its business.  Creditors also include contractors who worked

24 on expansions to the Norco facility, and suppliers of equipment and materials used in connection

25 with that construction.

26 ///

27 ///

28 ///

C. **THE DEBTOR'S PLAN FOR THIS CASE**

The Debtor is continuing to formulate a long-term plan for its operations. The Debtor's founders believe that the Debtor has great potential, and can position itself well in a global gummy market that is expected to grow significantly over at least the next six years. It is already pivoting toward doing more business with non-Goli customers and being less dependent on revenues from customers that refuse to honor their commitments. The Debtor's long-term plan will be influenced by, among other things, the Debtor's ability to generate revenues during the case, cuts in expenses, the willingness of suppliers to continue to do business with the Debtor, the potential for short-term and/or long-term financing, offers (if any) it may receive from potential purchasers, and recoveries from Goli and others whose fraudulent actions have caused damage to the Debtor and its creditors.

In the short term, the Debtor needs the respite afforded by the automatic stay to preserve its assets from potential creditor suits and judgment enforcement actions. To the best of the Debtor's knowledge, there are currently 28 lawsuits pending against the Debtor. Two additional plaintiffs have reduced their claims to judgment, and those judgments have not yet been satisfied. Facing the prospect that judgment creditors will commence enforcement proceedings, and plaintiffs will seek pre-judgment right-to-attach orders and writs of attachment, the Debtor filed for bankruptcy to preserve its assets, continue operating, and develop a plan to restructure its operations and debt.

## II.

## ADDITIONAL FACTS SPECIFIC TO THE RELIEF REQUESTED

A. **THE DEBTOR'S ASSETS**

According to the Debtor's balance sheet as of September 30, 2022, the Debtor had over $118 million of assets. This included (at the time) approximately $32.5 million of inventory, and $79.5 million of fixed assets. The Debtor believes that the fair market value of its accounts receivable, inventory and other assets is well more than $10 million.

///

///

///

**B.    THE DEBTOR'S SECURED CREDITORS**

The Debtor believes that it has three secured creditors. The liens in favor of the first two creditors are subject to avoidance as preferences, unless those creditors are fully secured. The third lien is in favor of the Debtor's principals, who consent to the use of cash collateral on the terms set forth herein.

**1.    Aramark Services, Inc. ("Aramark")**

Pursuant to a March 2021 contract, Aramark provided certain food services to the Debtor. Aramark operated the Debtor's cafeteria, where meals were offered, free of charge, to the Debtor's employees.

On October 10, 2022 (70 days before the Petition Date), the Debtor entered into a settlement agreement with Aramark. The Debtor agreed to pay Aramark approximately $1.47 million for services it previously rendered and for which it had not been paid. In the settlement agreement, the Debtor granted Aramark a security interest in substantially all of its assets.

On October 11, 2022, Aramark filed a UCC-1 financing statement with the California Secretary of State. Aramark identified its collateral as "All assets of the Debtors [sic] now owned or hereafter acquired."

The Debtor believes that, by virtue of the settlement agreement and financing statement, Aramark holds a perfected first-priority security interest in substantially all of the Debtor's assets. The Debtor believes that the value of such assets far exceeds the amount owed to Aramark.

**2.    Suitable Staffing Solutions ("Suitable Staffing")**

In June 2022, Suitable Staffing filed a complaint against the Debtor in L.A. Superior Court. The Debtor entered into a settlement with Suitable Staffing, but was unable to perform. Therefore, on October 5, 2022, a stipulated judgment was entered for about $2.23 million.

Suitable Staffing filed a Notice of Judgment Lien (JL-1) on November 1, 2022. Pursuant to California Code of Civil Procedure § 697.530, Suitable Staffing has a lien on the following types of personal property assets:

- Accounts receivable;
- Tangible chattel paper, as defined in § 9102(a)(79) of the Commercial Code;
- Equipment located in the state of California;
- Farm products located in the state of California;
- Inventory located in the state of California; and
- Negotiable documents of title located in the state of California.

With respect to these types of assets, the Debtor believes that Suitable Staffing holds a second-priority security interest. The Debtor believes that the value of such assets far exceeds the amount owed to Aramark and Suitable Staffing.

### 3. Sharon and Odelya Hoffman (the "Hoffmans")

In the days leading up to the Petition Date, the Debtor needed funds to pay professionals prior to filing its chapter 11 petition. Efforts to generate a few million dollars of revenue by selling excess inventory prior to the Petition Date were unsuccessful, and the Debtor did not receive other revenues sufficient to pay professionals from existing cash on hand. As a result, using funds they borrowed from friends and family, the Debtor's principals loaned the Debtor $600,000, evidenced by a promissory note and a security agreement. The note calls for interest-only payments at a rate of 9% per annum (prime plus two percent) for the first year, and payments of principal and interest over the next nine years. As was Aramark in its settlement agreement, the Hoffmans were granted a security interest in substantially all of the Debtor's assets. On December 18, 2022, the Hoffmans filed an "all assets" UCC-1 financing statement with the California Secretary of State.

The Debtor believes that the Hoffmans hold a perfected third-priority security interest in the assets covered by Suitable Staffing's lien, and a second-priority security interest in substantially all of the Debtor's other assets. The Debtor believes that the value of such assets far exceeds the amount owed to Aramark, Suitable Staffing and the Hoffmans. In any event, the Hoffmans have consented to the Debtor's use of cash collateral on the terms set forth herein.

///

///

## C. UCC-1 FINANCING STATEMENTS FILED BY ATOS IT SOLUTIONS AND SERVICES, INC. ("Atos") AND GOLI NUTRITION, INC.

In 2020, the Debtor entered into several contracts with Atos. The overall relationship is governed by a Master Services Agreement dated January 22, 2020 (the "**MSA**"), between Goli Delaware (defined in the MSA as "Customer"), the Debtor (defined in the MSA as "Guarantor"), and Atos (defined in the MSA as "Supplier"). Under the MSA, Atos was to provide support, consulting, design, acquisition, project management, implementation and/or related information technology services, with the specifics to be set forth in separate statements of work ("**SOWs**"). Goli, the Debtor and Atos entered into multiple SOWs during 2020, including two under which Atos supplied multiple new manufacturing lines at the Debtor's Norco facility.

In January 2021, Atos filed a financing statement describing its collateral as any and all accounts receivable of the Debtor. In July 2021, Atos filed a financing statement describing its collateral as equipment sold, financed or leased by Atos to the Debtor. Thus, at best, Atos has a security interest in the Debtor's current accounts receivable and the particular equipment sold, financed or leased by Atos.

As discussed in the accompanying declaration of Sharon Hoffman, the Debtor does not believe that it currently owes anything to Atos. In February 2022, Atos asserted that it was owed $25 million. In March 2022, Atos asserted that it was owed about $26 million. In May 2022, Atos said that it was owed about $26 million. But in June or July 2022, Atos entered into a settlement with Goli pursuant to which Goli appears to have paid Atos $32 million, satisfying amounts owed to Atos under the MSA and related SoWs. The Debtor understands that Goli asserts an ownership interest in the equipment covered by Atos' July 2021 financing statement, as evidenced by a UCC-1 filed by Goli in August 2022.[2]

///

///

---

[2] Although Goli filed a financing statement, the description of the "collateral" reflects that Goli was simply giving notice of its alleged ownership interest and that the Debtor is allegedly "a bailee with respect to such assets."

### D.  THE DEBTOR'S PROPOSED USE OF CASH COLLATERAL

Generally, the Code defines "cash collateral" to refer to cash, negotiable instruments, documents of title, securities, deposit accounts or other cash equivalents in which the estate has an interest. The Debtor desires to use cash collateral, and in particular cash on hand and the proceeds of accounts receivable and inventory, in the ordinary course of business to operate its business and pay operating expenses.

Exhibit "1" to the Declaration of Sharon Hoffman is an interim weekly projection of revenues and expenses through March 2023. The Debtor proposes to use cash collateral as set forth in that exhibit, with up to a 10% cumulative variance, through March 2023.

The Debtor believes that Aramark, Suitable Staffing and the Hoffmans (collectively the "**Secured Parties**") are more than adequately protected by their existing security interests in non-cash collateral assets of the Debtor. Nevertheless, the Debtor proposes that each party claiming an interest in cash collateral be granted a replacement lien on all of the estate's assets, excluding avoiding power claims and recoveries, to the extent that the Debtor's use of cash collateral results in a decrease in the value of such party's interest in cash collateral.

The use of the cash collateral is necessary for the Debtor's continued business operations and is in the best interests of the estate and the creditors. The proposed use of the cash collateral is no different than the prior prepetition use of the cash collateral. The Debtor has an ongoing need to generate funds to pay necessary operating expenses, and a concomitant need to use cash collateral for operations, to preserve and maintain the business pending the confirmation of a plan for the benefit of the estate and its creditors. Operating the Debtor's business will not only maximize the values of the business and the parties' collateral, but also preserve and maintain the business as a going concern.

///
///
///
///
///

# III.

# DISCUSSION

## A.  THE DEBTOR SHOULD BE AUTHORIZED TO USE CASH COLLATERAL

The Debtor's use of property of the estate is governed by section 363 of the Bankruptcy Code. *See* 11 U.S.C. §§ 363(c)(l), 1107(a), 1108. "Cash collateral" consists of "cash, negotiable instruments, documents of title, securities, deposit accounts or other cash equivalents in which the estate and an entity other than the estate have an interest." 11 U.S.C. § 363(a). It also consists of "the proceeds, products, offspring, rents, or profits of property . . . subject to a security interest as provided in section 552(b) of [the Bankruptcy Code]." *Id.* Section 363(c)(2) provides that with respect to cash collateral, a trustee or debtor in possession may use cash collateral if the non-debtor with an interest in the cash collateral consents, or "the court, after notice and a hearing, authorizes such use . . . in accordance with the provisions of this section." 11 U.S.C. §363(c)(2).

Except as to the Hoffmans, the Debtor does not know whether the Secured Parties consent to the Debtor's use of their cash collateral. Therefore, for purposes of this motion, the Debtor will proceed as if the Secured Parties have not expressly authorized the use of their cash collateral and are requesting adequate protection pursuant to section 363(e) of the Bankruptcy Code.

Section 361 of the Bankruptcy Code describes "adequate protection" as follows:

> When adequate protection is required under section 362, 363, or 364 of this title of an interest of an entity in property, such adequate protection may be provided by —
>
> (1) requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the . . . use, sale, or lease under section 363 of this title . . . results in a decrease in the value of such entity's interest in such property;
>
> (2) providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity's interest in such property; or
>
> (3) granting such other relief, other than entitling such entity to compensation allowable under section 503(b)(1) of this title as an administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

The use of cash collateral involves balancing the interests of the debtor and secured creditor, and the equities must therefore be balanced in each case. *In re Stein*, 19 B.R. 458, 459-60 (Bankr. E.D.

Pa. 1982). It is recognized that "the purpose of Chapter 11 is to rehabilitate debtors and generally, access to cash collateral is necessary to operate a business." *In re Dynaco Corporation*, 162 B.R. 389, 394 (Bankr. D.N.H. 1993) (quoting *Stein*, 19 B.R. at 459). To encourage reorganization, a flexible approach should be used in the application of adequate protection. *In re McCombs Props. VI, Ltd.*, 88 B.R. 261, 267 (Bankr. C.D. Cal. 1988) (citing *In re Martin*, 761 F.2d 472 (8th Cir. 1985)). A debtor's use of cash collateral during case administration must be considered in light of the quest for a successful reorganization. *In re O'Connor*, 808 F.2d 1393, 1397 (10th Cir. 1987). Adequate protection is not intended to nor need it stand as an absolute guarantee to the secured creditor that it will receive the value of its interest in the cash collateral. *McCombs*, 88 B.R. at 267; *In re Elliott Lease Cars, Inc.*, 20 B.R. 893, 896 (Bankr. D.R.I. 1982).

The use of cash collateral for the preservation of the value of a secured creditor's lien is sufficient to provide adequate protection to a secured creditor for use of those funds. *Fed. Nat'l. Mortgage v. Dacon Bollingbrook Assocs. Ltd. P'ship.*, 153 B.R. 204, 214 (N.D. Ill. 1993); *In re Triplett*, 87 B.R. 25, 27 (Bankr. W.D. Tex. 1988); *Stein*, 19 B.R. at 460; *In re Oak Glen R-Vee*, 8 B.R. 213, 216 (Bankr. C.D. Cal. 1981). In this case, one of the uses of cash collateral will be to maintain the Debtor's ongoing business.

It also necessary and appropriate that the Debtor be authorized to use cash collateral to fund the payment of other expenses that it incurs. So long as a secured creditor is adequately protected, cash collateral may be used by a debtor for the general benefit of the estate and need not be devoted exclusively to the protection of the creditor or the collateral. *In re Triplett*, 87 B.R. 25, 27 (Bankr. W.D. Tex. 1988); *see also In re Proalert, LLC*, 314 B.R. 436, 444 (9th Cir. BAP 2004).

The Debtor believes that it is appropriate to grant the Secured Parties a replacement lien on all assets of the estate, other than avoiding power claims and recoveries, if and to the extent there is any diminution in value of the Secured Parties' respective interests in cash collateral. In light of the value of the Debtor's assets, the Debtor does not believe that the Secured Parties will ever be undersecured. In any event, to provide them additional protections, the Debtor requests that the Court's order authorizing the use of cash collateral grant the Secured Parties such a replacement lien.

## B. THE COURT SHOULD SET A FINAL HEARING ON THE DEBTOR'S REQUEST FOR AUTHORITY TO USE CASH COLLATERAL THROUGH MARCH 2023

Both the Federal Rules of Bankruptcy Procedure and the Court's Local Bankruptcy Rules contemplate that the initial hearing on a cash collateral motion may be an interim hearing, with the hearing on final approval to be set after parties in interest have additional time to review the request for relief. *See* Fed. R. Bankr. P. 4001(b)(2); LBR 4001-2(b). At the initial hearing, only interim relief typically is afforded because the motion is brought at the beginning of the case and the main goal is to ensure that the debtor can maintain its operations pending a final hearing. Therefore, the Debtor is requesting that, at the initial hearing, the Court grant the relief requested herein on an interim basis.

The Debtor requests that the Court set a final hearing on its request for authority to use cash collateral during the week of January 23, 2023, with oppositions (if any) to the Debtor's request to be filed 14 days prior to the hearing. In the meantime, the Debtor intends to continue to refine its projections and hopes file updated projections during the first, or early during the second, week of January. This will provide the Secured Creditors and other parties adequate time to evaluate the relief requested and present written oppositions.

At the final hearing, the Debtor will request authority to use cash collateral through March 2023. Any request for authority to use cash collateral beyond March 31, 2023, will be the subject of a future motion to be heard prior to the end of March.

## IV.

## NOTICE GIVEN

The Debtor anticipates that this motion and other first day motions, and notice of the hearings thereon, will be served by overnight mail or other manner authorized or instructed by the Court on the Office of the United States Trustee, the Secured Parties, and creditors appearing on the Debtor's list of 20 largest unsecured creditors. The Debtor requests that the Court determine that no other or further notice of this motion is required.

**V.**

**<u>CONCLUSION</u>**

For the foregoing reasons, the Debtor requests that the Court enter an order substantially in the form of the order attached as Exhibit "A" hereto, granting this motion, authorizing the Debtor on an interim basis to use cash collateral on the terms described herein, and setting a hearing on the Debtor's request for final authority to use cash collateral through March 31, 2023.  The Debtor also requests such further relief as the Court deems just and proper.

DATED:  December 20, 2022                    DANNING, GILL, ISRAEL & KRASNOFF, LLP


                                            By:     */s/ Aaron E. de Leest*
                                                   AARON E. DE LEEST
                                                   Proposed Attorneys for Better Nutritionals, LLC.
                                                   Debtor and Debtor in Possession

1687195.3  27094                              14

# EXHIBIT A

JOHN N. TEDFORD, IV (State Bar No. 205537)
*jtedford@DanningGill.com*
AARON E. DE LEEST (State Bar No. 216832)
*adeleest@DanningGill.com*
DANNING, GILL, ISRAEL & KRASNOFF, LLP
1901 Avenue of the Stars, Suite 450
Los Angeles, California 90067-6006
Telephone: (310) 277-0077
Facsimile: (310) 277-5735

Proposed Attorneys for Better Nutritionals, LLC,
Debtor and Debtor in Possession

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**RIVERSIDE DIVISION**

| | |
|---|---|
| In re<br><br>BETTER NUTRITIONALS, LLC,<br><br>     Debtor and Debtor in Possession. | Case No. 6:22-bk-xxxxx-xx<br><br>Chapter 11<br><br>**INTERIM ORDER GRANTING DEBTOR'S MOTION FOR ENTRY OF ORDER (1) AUTHORIZING USE OF CASH COLLATERAL ON AN INTERIM BASIS PENDING A FINAL HEARING, (2) SCHEDULING A FINAL HEARING ON THE DEBTOR'S REQUEST FOR AUTHORITY TO USE CASH COLLATERAL THROUGH MARCH 31, 2023, AND (3) GRANTING RELATED RELIEF**<br><br>Date:     []<br>Time:    []<br>Place:   Courtroom []<br>             3420 Twelfth Street<br>             Riverside, California 92501 |

1

On December __, 2022, the Court heard and considered the *Motion for Entry of Order (1) Authorizing Use of Cash Collateral on an Interim Basis Pending a Final Hearing, (2) Scheduling a Final Hearing on the Debtor's Request for Authority to Use Cash Collateral Through March 31, 2023, and (3) Granting Related Relief* (the "**Motion**") (*docket no*. __) filed by debtor and debtor in possession Better Nutritionals, LLC (the "**Debtor**"), the Honorable _____, United States Bankruptcy Judge, presiding.  Appearances were as noted on the record at the hearing.

The Court having considered the Motion, the Declaration of Sharon Hoffman (the "**Hoffman Declaration**") (*docket no.* __), and other first-day motions filed by the Debtor, having heard the statements of counsel at the hearing, having determined that notice of the Motion and the hearing was adequate and proper, for good cause appearing, it is

**ORDERED THAT:**

1. The Motion is granted as set forth herein.

2. The Debtor is authorized to use cash collateral, as that term is defined in 11 U.S.C. § 363(a) of the Bankruptcy Code, on an interim basis through the close of business on January 27, 2023, in accordance with the budget attached as Exhibit "1" to the Hoffman Declaration, subject to a 10% cumulative variance.

3. The final hearing shall be held on January __, 2023, at __:__ _.m.  If the Debtor wishes to file supplemental papers for the final hearing, such papers shall be filed with the Court on or before January __, 2023.  Oppositions to the Debtors' request for authority to use cash collateral through March 31, 2023, shall be in writing and filed with the Court on or before January __, 2023. Replies shall be in writing and filed with the Court on or before January __, 2023.

4. Aramark Services, Inc., Suitable Staffing Solutions, and Sharon and Odelya Hoffman (collectively the "**Secured Parties**") shall be and is hereby granted a replacement lien on all of the estate's assets, excluding avoiding power claims and recoveries, to the extent that the Debtor's use of each such Secured Party's cash collateral results in a decrease in value of such Secured Party's interest in cash collateral.

1     5.    If and to the extent that Federal Rule of Bankruptcy Procedure 6004(h) applies to this order, the 14-day stay provided by that rule is waived.

    6.    The Court shall retain jurisdiction with respect to any matters, claims, rights or disputes arising from or related to the implementation of this order.

### ###