JOHN N. TEDFORD, IV (State Bar No. 205537)
*jtedford@DanningGill.com*
AARON E. DE LEEST (State Bar No. 216832)
*adeleest@DanningGill.com*
DANNING, GILL, ISRAEL & KRASNOFF, LLP
1901 Avenue of the Stars, Suite 450
Los Angeles, California 90067-6006
Telephone: (310) 277-0077
Facsimile: (310) 277-5735

Proposed Attorneys for Debtor and
Debtor-in-Possession Better Nutritionals, LLC

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## RIVERSIDE DIVISION

| | |
|---|---|
| In re | Case No. 6:22-bk-14723-MH |
| BETTER NUTRITIONALS, LLC, | Chapter 11 |
| Debtor. | **NOTICE OF APPLICATION AND APPLICATION OF DEBTOR AND DEBTOR-IN-POSSESSION TO EMPLOY FORCE TEN PARTNERS, LLC AS FINANCIAL ADVISOR; AND STATEMENT OF DISINTERESTEDNESS** |
| | Date:     January 31, 2023 |
| | Time:     2:00 p.m. |
| | Place:    Courtroom 301 |
| |              3420 Twelfth Street |
| |              Riverside, California 92501 |
| | [No Hearing Required] |

**TO THE HONORABLE MARK HOULE, UNITED STATES BANKRUPTCY JUDGE, AND**

**PARTIES IN INTEREST:**

**PLEASE TAKE NOTICE** that on January 31, 2023, at 2:00 p.m., in Courtroom 301 of the

United States Bankruptcy Court for the Central District of California, Riverside Division, located at

3420 Twelfth Street, Riverside, California 92501, the debtor and debtor in possession Better

Nutritionals, LLC (the "Debtor"), will and hereby moves for entry of an order under 11 U.S.C. §

327(a) authorizing the Debtor to employ Force Ten Partners, LLC ("Force 10" or the "Firm"), as its

1  financial advisor, effective as of December 20, 2022 (the "Petition Date"), on the terms set forth in

2  its engagement agreement attached  as Exhibit "1" to the Application.  In compliance with LBR

3  2014-1(b)(3), the Debtor hereby provides the following information regarding the Application:

4

5  1.    Identity of professional and the purpose and scope for which it is being employed

6        The Debtor seeks to retain Force 10 to provide financial advisory services, restructuring

7  services, and certain other related services.

8

9  2.    Whether professional seeks compensation pursuant to 11 U.S.C. § 328 or 11 U.S.C. § 330

10       The Debtor seeks to employ Force 10 pursuant to 11 U.S.C. § 327.  Force 10 will seek

11 approval of its compensation and reimbursement of its expenses pursuant to 11 U.S.C. §§ 330 and

12 331.

13

14 3.    Background and arrangements for compensation

15       On or about December 15, 2022, pursuant to a prepetition engagement agreement, the

16 Debtor retained Force 10 to provide financial advisory services, restructuring services, and certain

17 other related services prior to and after the bankruptcy filing.

18       The Debtor provided Force 10 a prepetition retainer of $126,000, as an advance against fees

19 and costs to be incurred by Force 10, and from those funds Force 10 was paid fees and cost of

20 $26,000 prior to the Petition Date.  Therefore, on the Petition Date, Force 10 had a retainer balance

21 of $100,000 (the "Retainer").

22       Postpetition, Force 10 will charge for its services at an hourly rate measured in increments

23 of tenths of an hour.  It will also seek reimbursement of its expenses.  Force 10's current hourly

24 rates are set forth in its engagement agreement attached  as Exhibit "1" hereto.  Force 10's rates

25 may change from time to time in the future.

26       With respect to the $100,000 Retainer, Force 10 will draw down on the Retainer in

27 accordance with the *Guide to Applications for Retainers, and Professionals and Insider*

28 *Compensation* promulgated by the local Office of the United States Trustee, except that the

Retainer will be maintained in the Firm's attorney-client trust account rather than a segregated trust account. Force 10 will submit a monthly Professional Fee Statement each month until the Retainer is exhausted.

Contemporaneously with the filing of this Application, the Debtor is filing a motion (the "Fee Procedures Motion") to establish procedures authorizing the Debtor to pay, on an interim basis, 80% of Force 10's fees, and 100% of Force 10's reimbursable costs, each month.[1] The Debtor is proposing the following procedures:

1. On or before the 20th day of each month following the month for which compensation and reimbursement of expenses is sought, each professional may file a monthly statement with the Court itemizing the fees and costs incurred by such professional. The filing of the monthly statement will constitute service on the Debtor, the U.S. Trustee, the Committee's counsel, and parties who have registered to receive electronic notices of documents filed in this case. If an official committee has not been appointed when the monthly statement is filed, it will be served by mail upon the creditors holding the 20 largest general unsecured claims.

2. If no objection to the monthly statement is filed and served within 10 days after the filing and service of the monthly statement, the Debtor may pay the Professional a percentage of its fees (in the case of Force 10, 80%) and 100% of the expenses for which payment is sought. Such payments will be made on an interim basis and will be subject to the filing of interim and final fee applications.

3. If a timely written objection to the monthly statement is filed by a party-in-interest, the Debtor will not pay the applicable professional the amount of the disputed funds until the objection has been consensually resolved by the objecting party and the professional. If the parties do not reach a consensual resolution of the objection, the professional may either (a) set the matter for hearing on at least 14 days' notice to the objecting party, or (b) forego payment of the disputed amount and seek approval of such disputed amount in connection with its next interim, or final, fee application. Notwithstanding any objection to a monthly statement, the professional may be paid any undisputed amount of fees and costs represented by a monthly statement.

4. In accordance with § 331 and applicable rules and guidelines, each professional will file and serve (in accordance with the Bankruptcy Code and federal and local rules) an application for Court approval of interim compensation (including any amounts held back pursuant to paragraphs 2 and 3 above) and reimbursement of expenses not less frequently than every 120 days. Any professional who fails to file an application for interim compensation when due will be ineligible to receive further monthly payments of fees and expenses pursuant to the filing of monthly statements as provided above, until such professional submits an application for interim compensation which is then ruled upon by the Court.

5. The pendency of an objection to payment of compensation or expenses requested by a professional in a particular monthly statement or interim fee application will not prevent such professional from receiving payment of fees and expenses pursuant to

---

[1] The Fee Procedures Motion also will seek authority to pay fees and costs of other professionals.

future monthly statements served in accordance with these procedures, except as otherwise ordered by the Court.

6.    Neither the payment of, nor the failure of any party to object to, fees and expenses requested in a monthly statement will in any way act as a waiver of the right to later object to such fees and expenses, or otherwise bind any party or the Court with respect to the subsequent consideration of the interim or final allowance of fees and expenses of any professional.

As set forth in paragraph 4 above, the Firm will file appropriate interim fee applications and eventually a final fee application, seeking final allowance of all fees and costs, in conformity with the requirements of Bankruptcy Code Sections 330 and 331.  The Firm understands that its compensation in the Debtor's case will be subject to the approval of the Court.  Any interim payments paid to the Firm pursuant to the proposed monthly statement payment procedure will still be subject to allowance by the Court, upon appropriate application and noticed hearing.

Upon allowance of such fees and costs, the Debtor will pay to the Firm the difference between the amounts allowed to the Firm and any interim compensation paid to the firm.  The Firm understands that if aggregate interim payments to the Firm exceed the amount that is ultimately allowed, the Firm will be required to, and will, promptly repay to the Debtor such difference.

The source of the Retainer is the Debtor.  The source of future payments to the Firm after the retainer has been exhausted will be the Debtor's estate.

This Application is based upon this notice and application, the Statement of Disinterestedness, the papers and pleadings on file in this case, and such other evidence as may be presented to the Court.

4.    <u>Name, address and telephone number of person who will provide a copy of the Application</u>

A copy of the Application is appended hereto.  Copies may also be requested by contacting Aaron E. de Leest at Danning, Gill, Israel & Krasnoff, LLP, 1901 Avenue of the Stars, Suite 450, Los Angeles, California 90067, Email: adeleest@DanningGill.com.  His telephone number is (310) 277-0077.

**PLEASE TAKE FURTHER NOTICE** that any party seeking to object to the relief sought must, not later than 14 days before the hearing date, file a written opposition with the Clerk of the Court and serve copies of the opposition upon the Debtor's counsel.  Failure to file and serve oppositions as set forth above may be deemed consent to the relief sought in the motion.  If you do not have any objection to the motion, you need not take any further action.

DATED:  January 10, 2023                    DANNING, GILL, ISRAEL & KRASNOFF, LLP


By:      _/s/ Aaron E. de Leest_____
         AARON E. DE ELEEST
         Proposed Attorneys for Debtor and
         Debtor-in-Possession, Better Nutritionals, LLC

## APPLICATION

Better Nutritionals, LLC (the "Debtor"), respectfully represents as follows:

### A.    BANKRUPTCY BACKGROUND

1.    On December 20, 2022 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Code").  The Debtor remains in possession of its property and continues to operate its business as a debtor in possession pursuant to sections 1107(a) and 1108 of the Code.

### B.    THE DEBTOR'S HISTORY AND BUSINESS OPERATIONS

2.    The Debtor is a state-of-the-art contract manufacturer and R&D leader in nutritional supplements.  The Debtor specializes in making cutting-edge formulations of gummy supplements focused on personal health and wellness.  The Debtor's output capacity currently is about nine billion gummies per year.  It is an FDA-registered manufacturer, and meets stringent standards to label its products as vegan, Kosher-certified, and free of top-8 allergens and gluten.

3.    The Debtor's headquarters is located at 3390 Horseless Carriage Drive, Norco, California.  Its four-building campus in Norco contains approximately 422,000 square feet of manufacturing, warehouse, R&D and office space.  The Debtor also manufactures products in an 18,000 square foot facility in Gardena, where it was headquartered until 2021.

4.    The Debtor grew significantly from 2019 through 2021.  Sales revenues increased from $21.8 million in 2019 to $222.8 million in 2021.  However, for the twelve months that ended on September 30, 2022, revenues were down and expenses were up, leading to a net loss during that 12-month period of about $45 million.

5.    The dramatic decrease in revenues and increase in expenses was the result of a series of wrongful acts by a Canadian entity, 12416913 Canada, Inc. ("12416913 Canada"), and certain persons and entities affiliated with that entity.  12416913 Canada is affiliated with the owners of Goli Nutrition, Inc., a Delaware corporation ("Goli Delaware"), which is a subsidiary of

Goli Nutrition, Inc., a Canadian corporation ("Goli Canada"). 12416916 Canada, Goli Delaware, and Goli Canada are hereinafter referred to herein as "Goli."

6.    The Debtor aggressively embarked on an expansion of its operations, and incurred substantial debt to trade creditors, building contractors, vendors, and other parties, in reliance on Goli's express representations and promises that it would significantly increase the amount of its purchases from the Debtor if the Debtor took the significant steps needed to supply that capacity. However, at some point in 2021, while representing that it needed more products – causing the Debtor to make the products to satisfy Goli's requests – Goli took delivery of and paid for only a fraction of what the Debtor made. Goli also refused to allow the Debtor to release the products Goli ordered so the Debtor could sell the products to others. The Debtor now understands that Goli was attempting to induce a private equity firm to invest in Goli, and used the inflated purchase orders as part of its efforts to obtain money from investors, but did not intend to honor its commitment to the Debtor.

7.    The Debtor has attempted to adjust its business model by, among other things, developing relationships with new clients. In mid-2021, over 90% of the Debtor's monthly sales volume was to Goli. That percentage has declined to 50% to 75%, and the Debtor is developing relationships with new customers, including some Fortune 100 customers.

8.    Unfortunately, the increase in revenues from non-Goli customers has not been adequate to dig the Debtor out of the deep hole caused by Goli. The Debtor's accounts payable exceed $55 million. Creditors include suppliers of goods, ingredients, equipment, employees and services used by the Debtor in the ordinary course of its business. Creditors also include contractors who worked on expansions to the Norco facility, and suppliers of equipment and materials used in connection with that construction.

## C.    THE DEBTOR'S PLAN FOR THIS CASE

9.    The Debtor is continuing to formulate a long-term plan for its operations. The Debtor's founders believe that the Debtor has great potential, and can position itself well in a global gummy market that is expected to grow significantly over at least the next six years. It is

1    already pivoting toward doing more business with non-Goli customers and being less dependent on

2    revenues from customers that refuse to honor their commitments.  The Debtor's long-term plan will

3    be influenced by, among other things, the Debtor's ability to generate revenues during the case,

4    cuts in expenses, the willingness of suppliers to continue to do business with the Debtor, the

5    potential for short-term and/or long-term financing, offers (if any) it may receive from potential

6    purchasers, and recoveries from Goli and others whose fraudulent actions have caused damage to

7    the Debtor and its creditors.

8         10.    In the short term, the Debtor needs the respite afforded by the automatic stay to

9    preserve its assets from potential creditor suits and judgment enforcement actions.  To the best of

10   the Debtor's knowledge, there are currently 28 lawsuits pending against the Debtor.  Two

11   additional plaintiffs have reduced their claims to judgment, and those judgments have not yet been

12   satisfied.  Facing the prospect that judgment creditors will commence enforcement proceedings,

13   and plaintiffs will seek pre-judgment right-to-attach orders and writs of attachment, the Debtor

14   filed for bankruptcy to preserve its assets, continue operating, and develop a plan to restructure its

15   operations and debt.

16

17   **D.    THE DEBTOR'S PROPOSED RETENTION OF FORCE 10 AS ITS FINANCIAL**

18        **ADVISOR**

19        11.    Force 10 is a financial advisory services firm specializing in corporate restructuring,

20   challenged business, litigation, and other special situations. Force 10 has substantial experience

21   with providing financial advisory services for individuals in Chapter 11 including analyzing

22   business operations, financial modeling, operational analyses, capital raising, asset sales, serving in

23   the capacity of financial advisor, and developing reorganization strategies.  A copy of Force 10's

24   resume is attached is attached as Exhibit "2" hereto.  The Debtor has also retained CSA Partners,

25   LLC ("CSA") to serve as its financial consultant in this case.  CSA's hourly rates are lower than

26   Force 10 and CSA will be handling the internal cash management controls and functions of the

27   Debtor as well as the bankruptcy reporting for the Debtor.  CSA and Force 10 are not intended to

28   have overlapping or duplicative roles and the professionals will endeavor not to duplicate services.

12.     The professionals who comprise Force 10 have a thorough understanding of the restructuring process, have substantial experience in restructurings and advising constituents in Chapter 11, including debtor, shareholders, lenders, and creditor committees.

13.     The Debtor proposes to retain Force 10, as its financial advisor effective December 20, 2022, on the terms set forth in its engagement agreement attached as Exhibit "1" hereto.

14.     The Debtor requires Force Ten Partners, LLC ("Force 10" or the "Firm") to serve as his financial advisor in this case to render the following types of professional services:

**Scope of Services:**

(a)     Evaluate and develop restructuring plans and other strategic alternatives to maximize the value of the Debtor. Force 10, in coordination with the Debtor's management and other professionals, may recommend various plans and strategic alternatives from time to time. Force 10 shall work with the Debtor's officers, duly appointed representatives, and its other professionals to attempt to implement such strategic alternatives ("Restructuring Efforts");

(b)     Restructuring Efforts may include one or more of the following: raising new debt or equity financing (each a "Financing Transaction"), or restructuring of existing indebtedness (in whole or in part);

(c)     Determine the value of certain assets, businesses, collateral, and damages derived from causes of action;

(d)     Assist and support the Debtor and legal counsel in pursuing causes of action and litigation;

(e)     Assist in negotiations with the Debtor's creditors and other stakeholders and in developing responses to any objections from parties in interest or other courses of action undertaken by the Debtor;

(f)     Assist the Debtor with implementing a reporting regime initially consisting of a weekly cash budget, variance report and key performance metrics commonly referred to as a 13-week cash flow budget;

(g)     Assist the Debtor with implementing operational, or business changes; and

(h)     Assist with any other activities the Debtor and Force 10 mutually agree to pursue.

**Court Disclosures**

(a)     Assist in the preparation of first day motions and developing procedures and processes necessary to implement such motions;

(b)    Assist with monthly operating reports, schedules, statements of financial affairs, UST packages and other financial information and disclosures required during the pendency of the Chapter 11 case;

(c)    Assist the Debtor and legal counsel with the preparation of all case motions requiring financial information or analysis; and

(d)    Assist with the development and maintenance of a creditor matrix, claims and other parties in interest information.

**Post-Petition Accounting/Cash Flow/Operations**

(a)    Assist with developing accounting and operating procedures to segregate post- petition business transactions;

(b)    Assist with monitoring all cash disbursements according to the cash budget;

(c)    Assist with preparing cash budgets and weekly monitoring and compliance thereof; and

(d)    Assist with business operating activities, as necessary.

**Plan of Reorganization**

(a)    Render general financial advice, financial analytics, and modeling;

(b)    Assist in preparing the plan of reorganization and disclosure statement;

(c)    Assist with the review, classification, and quantification of claims against the estates under the plan of reorganization;

(d)    Assist in the identification of executory contracts and unexpired leases and performing the cost/benefit evaluations with respect to the assumption or rejection of each, as needed;

(e)    Assist in effecting the plan of reorganization; and

(f)    Render such other general business consulting or such additional assistance as the Debtor or legal counsel may deem necessary that are consistent with the role of a financial advisor and not duplicative of services provided by other professionals.

**E.    PREPETITION RETAINER, PROCEDURES FOR FUTURE PAYMENTS**

15.    The Debtor initially retained Force 10 on or about December 15, 2022, to provide financial advisory services, restructuring services, and certain other related services prior to and after the bankruptcy filing.

16.    Under the terms of Force 10's retainer agreement, the Debtor provided Force 10 a retainer of $126,000, as an advance against fees and costs to be incurred by Force 10, and from those funds Force 10 was paid fees and cost of $26,000, prior to the Petition Date.  Therefore, on the Petition Date, Force 10 had a retainer balance of $100,000 (the "Retainer").

17.    Postpetition, Force 10 will charge for its services at an hourly rate measured in increments of tenths of an hour.  It will also seek reimbursement of its expenses.  Force 10's current hourly rates are set forth in its engagement agreement attached  as Exhibit "1" hereto. Force 10's rates may change from time to time in the future.

18.    Contemporaneously with the filing of this Application, the Debtor is filing a motion to establish procedures authorizing the Debtor to pay, on an interim basis, 80% of Force 10's fees, and 100% of Force 10's reimbursable costs, each month.  The Debtor is proposing the following procedures:

(a)    On or before the 20th day of each month following the month for which compensation and reimbursement of expenses is sought, each professional may file a monthly statement with the Court itemizing the fees and costs incurred by such professional.  The filing of the monthly statement will constitute service on the Debtor, the U.S. Trustee, the Committee's counsel, and parties who have registered to receive electronic notices of documents filed in this case.  If an official committee has not been appointed when the monthly statement is filed, it will be served by mail upon the creditors holding the 20 largest general unsecured claims in this case.

(b)    If no objection to the monthly statement is filed and served within 10 days after the filing and service of the monthly statement, the Debtor may pay the Professional a percentage of its fees (in the case of Force 10, 80%) and 100% of the expenses for which payment is sought.  Such payments will be made on an interim basis and will be subject to the filing of interim and final fee applications.

(c)    If a timely written objection to the monthly statement is filed by a party-in-interest, the Debtor will not pay the applicable professional the amount of the disputed funds until the objection has been consensually resolved by the objecting party and the professional.  If the parties do not reach a consensual resolution of the objection, the professional may either (a) set the matter for hearing on at least 14 days' notice to the objecting party, or (b) forego payment of the disputed amount and seek approval of such disputed amount in connection with its next interim, or final, fee application. Notwithstanding any objection to a monthly statement, the professional may be paid any undisputed amount of fees and costs represented by a monthly statement.

(d)    In accordance with § 331 and applicable rules and guidelines, each professional will file and serve (in accordance with the Bankruptcy Code and federal and local rules) an application for Court approval of interim

compensation (including any amounts held back pursuant to subparagraphs (b) and (c) above) and reimbursement of expenses not less frequently than every 120 days.  Any professional who fails to file an application for interim compensation when due will be ineligible to receive further monthly payments of fees and expenses pursuant to the filing of monthly statements as provided above, until such professional submits an application for interim compensation which is then ruled upon by the Court.

(e)      The pendency of an objection to payment of compensation or expenses requested by a professional in a particular monthly statement or interim fee application will not prevent such professional from receiving payment of fees and expenses pursuant to future monthly statements served in accordance with these procedures, except as otherwise ordered by the Court.

(f)      Neither the payment of, nor the failure of any party to object to, fees and expenses requested in a monthly statement will in any way act as a waiver of the right to later object to such fees and expenses, or otherwise bind any party or the Court with respect to the subsequent consideration of the interim or final allowance of fees and expenses of any professional.

19.      The Firm will file interim fee applications and eventually a final fee application, seeking final allowance of all fees and costs, in conformity with the requirements of Bankruptcy Code Sections 330 and 331.

20.      The Firm understands that its compensation in the Debtor's case will be subject to the approval of the Court.  Any interim payments paid to the Firm pursuant to the proposed monthly statement payment procedure will still be subject to allowance by the Court, upon appropriate application and noticed hearing.

21.      Upon allowance of such fees and costs, the Debtor will pay to the Firm the difference between the amounts allowed to the Firm and any interim compensation paid to the firm. The Firm understands that if aggregate interim payments to the Firm exceed the amount that is ultimately allowed, the Firm will be required to, and will, promptly repay to the Debtor such difference.

22.      The source of the Retainer is the Debtor.  The source of future payments to the Firm after the retainer has been exhausted will be the Debtor's estate.

F.      **DISINTERESTEDNESS OF FORCE 10**

23.      As of the date of this Application, to the best of the Debtor's knowledge and after consideration of the disclosures in the Statement of Disinterestedness filed concurrently herewith,

1   the Debtor believe that Force 10, its members and employees of Force 10 are disinterested persons

2   as that term is defined in 11 U.S.C. § 101(14), are not connected with the Debtor, its creditors, any

3   other party in interest, their attorneys and accountants, or to the estate, and have no relation to any

4   bankruptcy judge presiding in this district, the Clerk of the Court or any relation to the United

5   States Trustee in this district, or any person employed at the Court or the Office of the United

6   States Trustee, nor does Force 10, its members and employees represent or hold an adverse interest

7   with respect to the Debtor, any creditor, or to the estates, *except to the extent that*: prior to the

8   Petition Date, Force 10 was retained by the Debtor to provide financial restructuring services as set

9   forth above.

10          24.    Force 10 has not been retained to assist any entity or person other than the Debtor on

11   matters relating to, or in connection with, the bankruptcy case.

12          25.    In addition, the Debtor do not owe Force 10 any amount for services performed or

13   expenses incurred prior to the Petition Date and thus, Force 10 is not a prepetition creditor of the

14   Debtor.

15

16          WHEREFORE, the Debtor requests that the Court enter an order authorizing it to employ

17   Force 10 as its financial advisor, effective as of December 20, 2022, on the terms set forth in its

18   engagement agreement attached  as Exhibit "1" hereto, as an administrative expense in this

19   bankruptcy case, and for such other and further relief as may be determined just and proper.

20

21   DATED: January  9, 2023          Better Nutritionals, LLC, Debtor and
                                      Debtor in Possession.

22

23

24                          By:    _____

25                                 Sharon Hoffman, Manager

26

27

28

1701970.1  27122                          13

## STATEMENT OF DISINTERESTEDNESS FOR EMPLOYMENT
## OF PROFESSIONAL PERSON UNDER F.R.B.P. 2014

1. Name, address and telephone number of the professional ("the Professional" or "Force 10") submitting this Statement:  See Resume attached as  Exhibit "2" hereto.

FORCE TEN PARTNERS LLC
Adam Meislik
5271 California Avenue, Suite 270
Irvine, CA 92617
Telephone: (949) 357-2360

2. The services to be rendered by the Professional in this case are (specify):

See pp. 9-10  of the Application.

3. The terms and source of the proposed compensation and reimbursement of the Professional are (specify):

See para. 15-22 of the Application and Exhibit "2.

4. The nature and terms of retainer (i.e., nonrefundable versus an advance against fees) held by the Professional are (specify):

See para. 15-22 of the Application and Exhibit "2".

5. The investigation of disinterestedness made by the Professional prior to submitting this Statement consisted of (specify):

Conflicts check of with respect to the Debtor, its owners and principals, and all of the creditors listed on the master mailing list of the Debtor.

6. The following is a complete description of all of the Professional's connections with the debtor, principals of the debtor, insiders, the debtor's creditors, any other party or parties in interest, and their respective attorneys and accountants, the United States Trustee or any person employed in the Office of the United States Trustee (specify, attaching extra pages as necessary):

Force 10 had no prior relationship with the Debtor before employment. Force 10 has worked with certain case professionals before including: Danning Gill Israel & Krasnoff, LLP, proposed counsel to the Debtor; and Levene, Neale, Bender, Yoo, Golubchik L.L.P, bankruptcy counsel to Goli. We do not have a conflict. At the time of this writing, Force 10 has no connections to any creditor. As the case develops, Force 10 will review its connections and update this statement when appropriate.

7. Force 10 is not a creditor, an equity security holder or an insider of the debtor, except as follows (specify, attaching extra pages as necessary):

8. Force 10  is not and was not, within 2 years before the date of the filing of the petition, a director, officer or employee of the Debtor.

9. Force 10  does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtor, or for any other reason.

10.    Name, address and telephone number of the person signing this Statement on behalf of the Professional and the relationship of such person to the Professional (specify):

FORCE TEN PARTNERS LLC
Adam Meislik
5271 California Avenue, Suite 270
Irvine, CA 92617
Telephone: (949) 357-2360

11.    No Force 10 personnel or relatives of Force 10 personnel are related to employees of the United States Trustee.

12.    Total number of attached pages of supporting documentation:  9

13.    After conducting or supervising the investigation described in paragraph 5 above, I declare under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct except that I declare that paragraphs 6 through 9 and 11 are stated on information and belief.

Executed on January 10, 2023, at Irvine, California.

_____
Adam Meislik

**EXHIBIT "1"**

**FORCE 10**
P A R T N E R S

5271 California Suite 270
Irvine, CA 92617
force10partners.com
Ph: (949) 357-2360

December 15, 2022

Better Nutritionals LLC
3390 Horseless Carriage Drive
Norco, CA 92860

Attn:   Sharon Hoffman, CEO

<u>Re: Better Nutritionals LLC: Force Ten Partners, LLC — "Engagement Agreement"</u>

Dear Mr. Hoffman:

This letter is to confirm Force Ten Partners LLC's ("Force 10") engagement with Better Nutritionals, LLC, a California limited liability company. Better Nutritionals, LLC will be referred to in this agreement as "BN." Force 10 will serve as the Financial Advisor to BN and will seek ways to accomplish the stakeholders' goals of maximizing value. We understand BN seeks to keep restructuring fees and complexity to a minimum.  As such, Force 10 will leverage existing BN employees, professionals, and consultants who can provide specific financial analyses at our direction. Hence, Force 10 will use its best efforts not to replicate efforts.

1. **Scope of Services:**

   a) <u>Services</u>. Force 10 is engaged to provide financial advisory services to BN. Force 10 will seek to provide the following services, as appropriate:

      i.   Evaluate and develop restructuring plans and other strategic alternatives to maximize the value of BN. Force 10, in coordination with BN management and other professionals, may recommend various plans and strategic alternatives from time to time. Force 10 shall work with BN officers, duly appointed representatives, and its other professionals to attempt to implement such strategic alternatives ("Restructuring Efforts");

      ii.  Restructuring Efforts may include one or more of the following: raising new debt or equity financing (each a "Financing Transaction"), or restructuring of existing indebtedness (in whole or in part);

      iii. Determine the value of certain assets, businesses, collateral, and damages derived from causes of action;

      iv.  Assist and support BN and legal counsel in pursuing causes of action and litigation;

    v.      Assist in negotiations with BN creditors and other stakeholders and in developing responses to any objections from parties in interest or other courses of action undertaken by BN;

    vi.      Assist BN with implementing a reporting regime initially consisting of a weekly cash budget, variance report and key performance metrics commonly referred to as a 13-week cash flow budget;

    vii.      Assist BN with implementing operational, or business changes; and

    viii.      Assist with any other activities BN and Force 10 mutually agree to pursue.

In the event BN determines it is in the best interests of its stakeholders to initiate a Chapter 11 filing, Force 10 will provide such consulting, and advisory services as Force 10 and BN deem appropriate and feasible to advise BN during their Chapter 11 cases, including, but not limited to the following:

b) <u>Court Disclosures</u>

    i.      Assist in the preparation of first day motions and developing procedures and processes necessary to implement such motions;

    ii.      Assist with monthly operating reports, schedules, statements of financial affairs, UST packages and other financial information and disclosures required during the pendency of the Chapter 11 case;

    iii.      Assist BN and legal counsel with the preparation of all case motions requiring financial information or analysis; and

    iv.      Assist with the development and maintenance of a creditor matrix, claims and other parties in interest information.

c) <u>Post-Petition Accounting/Cash Flow/Operations</u>

    i.      Assist with developing accounting and operating procedures to segregate post-petition business transactions;

    ii.      Assist with monitoring all cash disbursements according to the cash budget;

    iii.      Assist with preparing cash budgets and weekly monitoring and compliance thereof; and

    iv.      Assist with business operating activities, as necessary.

d)  Plan of Reorganization

    i.    Render general financial advice, financial analytics, and modeling;

    ii.    Assist in preparing the plan of reorganization and disclosure statement;

    iii.    Assist with the review, classification, and quantification of claims against the estates under the plan of reorganization;

    iv.    Assist in the identification of executory contracts and unexpired leases and performing the cost/benefit evaluations with respect to the assumption or rejection of each, as needed;

    v.    Assist in effecting the plan of reorganization; and

    vi.    Render such other general business consulting or such additional assistance as BN or legal counsel may deem necessary that are consistent with the role of a financial advisor and not duplicative of services provided by other professionals.

## 2. Confidentiality:

Force 10 and its personnel shall keep confidential all non-public information received from BN in conjunction with this engagement, except (i) as requested by BN or its legal counsel; (ii) as required by legal proceedings; or (iii) as reasonably required in the performance of this engagement. All confidentiality obligations shall cease as to any part of such information that is or becomes public other than as a result of a breach of this provision.

## 3. Compensation for Services:

a)  Hourly Fees. Force 10 will endeavor to match the work required to the least expensive Force 10 staff member capable of performing the work. Force 10 will be paid at its current customary hourly rates, subject to annual adjustment on January 1 of each year, as set forth below:

Firm Rates:

| | |
|---|---|
| Partners | $750-$950 |
| Managing Directors | $495-$650 |
| Directors & Associates | $325-$475 |
| Staff | $225-$325 |

The Initial Force 10 team member and hourly rates assigned to this engagement are:

| | |
|---|---|
| Adam Meislik, Partner | $850 per hour |
| Darryl Myers, Managing Director | $495 per hour |
| Chad Kurtz, Managing Director | $650 per hour |

3

b)  <u>Success Fee</u>**.** In addition to the hourly fees set forth above, Force 10 shall be entitled to a success fee as follows:  Subject to Bankruptcy court order, upon the consummation of any financing transaction by a party introduced directly to BN by Force 10 (a "Force 10 Financing Source"), , BN shall pay to Force 10 (i) a cash fee ("Qualified Financing Transaction Fee") equal to: (A) 5% of the aggregate amount of senior debt raised or committed; and (B) 5% of the aggregate amount of all unsecured, non-senior, and subordinated debt raised or committed by the Force 10 Financing Source less (ii) a credit of up to 2% based on 50% of the hourly fees incurred and paid for professional time specifically expended pursuing such Force 10 Financing Source.  BN shall have no obligation to enter into any transaction with a Force 10 Financing Source and any determination with respect thereto shall be in BN's sole and absolute discretion. The right of introduction and potential financing by a Force 10 Financing Source granted to Force 10 shall be non-exclusive.  Notwithstanding anything to the contrary contained in this paragraph b), prior to pursuing a Force 10 Financing Source, Force 10 shall identify such Force 10 Financing Source to BN, which together with the estimated amount of  time required for pursuing such opportunity be provided to BN prior to authorization to pursue such financing. The Qualified Financing Transaction Fee is due and payable upon closing of the applicable transaction.

c)  <u>Exclusion</u>.  For purposes of clarity, notwithstanding the foregoing, Force 10 shall not be entitled to a success fee with respect to any Financing Transaction with any insider of BN (as that term is defined in 11 U.S.C. § 31) or any entity in which an insider of BN holds, directly or indirectly, a majority or controlling interest.

d)  In conjunction with Force 10, BN will use its best efforts to compel lienholders to provide assurance of payment of Force 10's fees and expenses to the extent such proceeds do not exceed the balance of secured debt.

**4.  Expenses:**

In addition to professional fees, Force 10 will bill for reasonable out-of-pocket expenses incurred in connection with this assignment, such as travel, lodging, and third-party research, if applicable. Force 10 will seek BN's pre-approval before incurring any material out-of-pocket expenses.

**5.  Payment Terms:**

BN shall pay Force 10's hourly fees and reimburse its expenses within the later of: (i) five (5) business days of BN's receipt of an invoice for such services and itemized expenses or (ii) the date BN is authorized to pay such amounts according to an order of the Bankruptcy Court. Force 10 anticipates invoicing its hourly fees and expenses monthly.

**6.  Retainer:**

Upon execution of this agreement, BN will remit a $100,000 evergreen retainer to be applied to the final amounts due by BN to Force 10.  BN shall remit an amount sufficient enough to maintain

4

a $100,000 retainer upon filing Chapter 11. Any remaining retainer balance will be returned to BN.

a)  Term/Tail

i.  The term of this Engagement shall commence as of the date set forth above and shall continue until the Engagement is completed unless terminated with or without cause by either BN or Force 10 on fifteen (15) days prior written notice, in which event all compensation and expenses owing to Force 10 through the date of such termination (including fees and expenses incurred prior to but invoiced after such termination) shall be immediately due and payable. All provisions of this Agreement setting forth rights or obligations that extend beyond the termination of the Agreement shall survive and shall continue to bind the parties.

ii.  Force 10 may withdraw from this Engagement and terminate its obligations hereunder upon written notice to BN if any of BN management, employees or Board make it unethical or unreasonably difficult for Force 10 or its personnel to fulfill the terms of this Engagement or otherwise perform their duties under this Engagement.

iii.  Notwithstanding the expiration or termination of this engagement, Force 10 shall be entitled to full payment by BN of the any Qualified Financing Transaction Fee: (i) so long as a financing transaction with a Force !0 Financing Source is consummated during the term of this engagement, or within twelve (12) months after the date of expiration or termination of this engagement (the "Tail Period"), and/or (ii) if an agreement in principle to consummate such transaction is executed by BN during the term of this Agreement, or within the Tail Period, and such transaction is consummated at any time in the ensuing twelve (12) months following such execution with the counterparty named in such agreement, or with any affiliate, employee or investor in such counterparty, or any affiliate of any of the foregoing. "Affiliate" shall have the meaning as defined in the Securities Exchange Act of 1934, as amended.

**7.  Applicable Law:**

This engagement shall be governed by and construed in accordance with the laws of the State of California, without reference to principles of conflicts, unless the engagement involves a Chapter 11 filing. Then any action arising from or related in any way to this engagement shall be brought only in the Bankruptcy Court.

**8.  Conflicts:**

Force 10 is unaware of any relationship that would create a conflict of interest with BN or those parties in interest of which you have made us aware. Force 10 is a financial advisory and consulting firm that serves clients in numerous cases and industries, both in and out of court, and may have rendered services to or have business associations with other entities or people which may have relationships with BN, including creditors of BN. To the extent Force 10 becomes

5

aware of a conflict of interest with BN during the term of this Agreement, Force 10 will notify BN promptly in writing.

Upon your acceptance of this engagement's terms, Force 10 will not represent the interests of any such entities or people in connection with this matter. BN acknowledges and agrees that the services provided under this engagement are being provided on behalf of each subsidiary of BN, where appropriate. BN and each subsidiary waive any conflicts of interest arising from the services provided. Based on our current understanding of the financial and business relationships between the subsidiaries, there is an alignment of interest between BN and its subsidiaries.

9. **No Third-Party Beneficiary:**

BN acknowledges that all advice and work product given by Force 10 or any of its personnel in connection with this engagement is intended solely for the benefit and use of BN, including its authorized agents, in their capacities as such, for purposes of considering the matters to which this engagement relates. Without Force 10's specific case-by-case written approval, BN agrees that the advice and any work product shall not be used for any other purposes and that they shall not be reproduced, disseminated, quoted, or referred to other than for the exclusive purpose of accomplishing the tasks that are the subject matter of this engagement during the term of this engagement, except as otherwise required by law.

10. **Indemnification:**

Force 10 will be acting on your behalf.  You will indemnify Force 10 in the manner set forth in Annex A, which is attached and incorporated by reference in its entirety to this letter agreement, the provisions of which are hereby acknowledged by you. Force 10 acknowledges the Bankruptcy Court may not accept this indemnification provision and will exclude it from Force Ten Partner's employment order.

The preceding has been read, understood, accepted, and approved, and the undersigned hereby agrees to retain Force 10 in agreement with the terms and provisions contained herein.

Better Nutritionals, LLC, a California
limited liability company

By: _____
Name: Sharon Hoffman
Title: CEO

Force Ten Partners LLC, a Delaware
limited liability company

By: _____
Name: Adam Meislik
Title: Partner

6

**ANNEX A: INDEMNIFICATION**

BN agrees to indemnify and hold harmless Force 10 and its affiliates and their respective present and former directors, officers, employees, agents and controlling persons (each such person, including Force 10, an "Indemnified Party") to the extent fully permitted by law from and against any losses, claims, damages and liabilities, joint or several (collectively, the "Damages"), to which such Indemnified Party may become subject in connection with or otherwise relating to or arising from any services contemplated by this letter agreement or the engagement of or performance of services by an Indemnified Party thereunder, and will reimburse each Indemnified Party for all fees and expenses (including the fees and expenses of counsel) (collectively, "Expenses") as incurred in connection with investigating, preparing, pursuing or defending any threatened or pending claim, action, proceeding or investigation (collectively, the "Proceedings") arising therefrom, whether or not such Indemnified Party is a formal party to such Proceeding; provided, that BN will not be liable to any such Indemnified Party to the extent that any Damages are found in a final non-appealable judgment by a court of competent jurisdiction to have resulted primarily from the gross negligence or willful misconduct of the Indemnified Party seeking indemnification hereunder. BN also agrees that no Indemnified Party will have any liability (whether direct or indirect, in contract, tort or otherwise) to BN or any person asserting claims on behalf of BN arising out of or in connection with any services contemplated by this letter agreement or the engagement of or performance of services by any Indemnified Party thereunder except to the extent that any Damages are found in a final non-appealable judgment by a court of competent jurisdiction to have resulted primarily from the gross negligence or willful misconduct of the Indemnified Party.

If for any reason other than in accordance with this letter agreement, the foregoing indemnity is unavailable to an Indemnified Party or insufficient to hold an Indemnified Party harmless, then BN will contribute to the amount paid or payable by an Indemnified Party as a result of such Damages (including all Expenses incurred) in such proportion as is appropriate to reflect the relative benefits to BN and/or BN's  beneficiaries on the one hand, and Force 10 on the other hand, in connection with the matters covered by this letter agreement or, if the foregoing allocation is not permitted by applicable law, not only such relative benefits but also the relative faults of such parties as well as any relevant equitable considerations. BN agrees that for purposes of this paragraph, the relative benefits to BN and/or BN's beneficiaries and Force 10 in connection with the matters covered by this letter agreement will be deemed to be in the same proportion that the total value paid or received or to be paid or received by BN and/or BN's beneficiaries in connection with the services contemplated by this letter agreement, whether or not consummated, bears to the fees paid to Force 10 under this letter agreement; provided, that in no event will the total contribution of all Indemnified Parties to all such Damages exceed the amount of fees actually received and retained by Force 10 under this letter agreement (excluding any amounts received by Force 10 as reimbursement of expenses). Relative fault shall be determined by reference to, among other things, whether any alleged untrue statement or omission or any alleged conduct relates to information provided by BN or other conduct by BN (or BN's beneficiaries) on the one hand, or by Force 10, on the other hand.

BN agrees not to enter into any waiver, release or settlement of any Proceeding (whether or not Force 10 or any other Indemnified Party is a formal party to such Proceeding) in respect of which indemnification may be sought hereunder without the prior written consent of Force 10 (which consent will not be unreasonably withheld), unless such waiver, release or settlement (i) includes an

7

unconditional release of Force 10 and each Indemnified Party from all liability arising out of such Proceeding and (ii) does not contain any factual or legal admission by or with respect to any Indemnified Party or any adverse statement with respect to the character, professionalism, expertise or reputation of any Indemnified Party or any action or inaction of any Indemnified Party.

The indemnity, reimbursement, and contribution obligations of BN hereunder will be in addition to any liability which BN may have at common law or otherwise to any Indemnified Party and will be binding upon and inure to the benefit of any successors, assigns, heirs, and personal representatives of BN or an Indemnified Party. The provisions of this Annex will survive the modification or termination of this letter agreement.

Agreed to and accepted as
of the above date.

_____

Sharon Hoffman
CEO
Better Nutritionals, LL a California limited liability company

8

**EXHIBIT "2"**



Force 10 professionals have extensive experience and national reputations in providing the type of services required by debtors and creditors in complex situations. With a breadth of experience in complex restructuring matters, litigation support, and finance, its professionals advise debtors, shareholders, equity committees, lenders, and creditors in bankruptcy proceedings. Force 10 has compiled an impressive track record of debtor and creditor advisory assignments.

Force 10 differentiates itself by being focused on a positive resolution for all parties involved and our unique insight is an amalgamation of accounting, finance, legal, strategy, and gamesmanship -- all rooted in years of experience.

Force 10 provides these services with a highly experienced team hailing from big firms in an extremely efficient and nimble manner.

### Corporate Restructuring Services
Force 10's professionals have decades of experience and thoroughly understand the restructuring process. We advise clients through complex corporate restructurings, including both in and out-of- court matters. Many of our clients have complex capital structures, cross-collateralization issues, owner/shareholder fiduciary/conflict of interest concerns, and other issues.

### Business Turnaround & Crisis Management
Force 10's team works closely with our clients' management teams, board of directors, and investors to develop and implement turnaround plans through significant improvement in financial and operating performance. We have extensive operating experience and know-how to quickly stabilize a crisis. We provide an independent evaluation of the key business drivers, operating infrastructure, competitive landscape, and strategy to reduce losses, increase liquidity, and improve the performance of the business.

### Fiduciary Services
Force 10's breadth of skills and experience with operating businesses, financial discipline, forensic accounting, and litigation support have been widely recognized as an excellent fit for being appointed and serving in fiduciary capacities. Generally, Force 10 is appointed as a fiduciary in situations involving complex litigation, financial disputes, breaches of fiduciary duties, and general supervision. We often act as fiduciaries, chief restructuring officer, receiver and independent board members.

### Forensic Accounting
Force 10 professionals have an investigative mindset, deep analytical skills, and extensive experience in performing investigative and forensic accounting services. Our clients include boards of directors/special committees, creditors' committees, plaintiff's legal counsel, and trustees. These services encompass fraud investigation, financial disputes, fraudulent transfers and avoidable transactions, and the application of complex accounting issues.

### Creditor Representation
Force 10 also represents secured creditors and creditor committees. We have assisted in evaluation of plans of reorganization and have prepared plans to compete with a debtor's plan to maximize the recovery to our clients by evaluating the debtor's business operations, key metrics, and business viability. Further we assess the feasibility of the debtor's proposed plan of reorganization; sales under section 363 of the Bankruptcy Code; investigate preference actions; and analyze insider compensation, prepetition asset transfers/sales, and other actions of directors and officers.

### Investment Banking
Force 10 professionals hail from leading investment banks (Oppenheimer, CIBC World Markets and Jefferies) and have decades of experience advising on mergers, acquisitions, divestitures, and corporate finance for distressed and healthy companies. We are well known for our leading market share in transactions taking advantage of section 363 of the bankruptcy code.

### Expert Testimony
Force 10 professionals are competent and credible expert witnesses with experience testifying about solvency, valuation, interest rates, securities, and accounting, as well as professional duty of care standards including financial advisors and investment bankers. Force 10's professionals have provided expert testimony in litigation matters on such issues as solvency, valuation, plan feasibility, interest rate opinions, preference/avoidable transactions, economic damages, fraud examination and accounting issues.

 **Force 10 Partners**           **www.force10partners.com**

---

| Orange County, CA | Los Angeles, CA | Dallas, TX | Las Vegas, NV |
|---|---|---|---|
| 5271 California Suite 270, Irvine CA, 92617 (949) 357-2360 | 8383 Wilshire Blvd., Suite 800 Beverly Hills, CA 90211 (310) 870-3205 | 1919 McKinney Ave. Suite 100 Dallas, TX, 75201 (469) 250-1180 | 6671 S. Las Vegas Blvd. Bldg. D, Suite 210 Las Vegas, NV, 89119 (702) 605-2760 |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 1901 Avenue of the Stars, Suite 450, Los Angeles, CA 90067-6006.

A true and correct copy of the foregoing document entitled (*specify*):  NOTICE OF APPLICATION AND APPLICATION OF DEBTOR AND DEBTOR-IN-POSSESSION TO EMPLOY FORCE TEN PARTNERS, LLC AS FINANCIAL ADVISOR; AND STATEMENT OF DISINTERESTEDNESS will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document.
On **January 10, 2023** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page.

**2. SERVED BY UNITED STATES MAIL**:  On **January 10, 2023**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by causing to be placed a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

Debtor and Debtor in Possession
Better Nutritionals, LLC
3390 Horseless Carriage Drive
Norco, CA 92860

The Honorable Mark D. Houle
United States Bankruptcy Court
3420 Twelfth Street, Suite 325
Bin Outside Courtroom 301
Riverside, CA 92501-3819

☒ Service information continued on attached page.

**3. <u>SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL</u>** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| January 10, 2023 | Vivian Servin | /s/ Vivian Servin |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

ADDITIONAL SERVICE INFORMATION (if needed):

**1.  <u>SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")</u>**

- **Marshall J August**    maugust@frandzel.com, rsantamaria@frandzel.com

- **Reem J Bello**    rbello@goeforlaw.com, kmurphy@goeforlaw.com

- **Anthony Bisconti**    tbisconti@bklwlaw.com,
  7657482420@filings.docketbird.com;docket@bklwlaw.com

- **Richard D Buckley**    richard.buckley@arentfox.com

- **Aaron E. DE Leest**    adeleest@DanningGill.com,
  danninggill@gmail.com;adeleest@ecf.inforuptcy.com

- **Abram Feuerstein**    abram.s.feuerstein@usdoj.gov

- **Adam R. Fracht**    afracht@stibbsco.com

- **Robert P Goe**    kmurphy@goeforlaw.com, rgoe@goeforlaw.com;goeforecf@gmail.com

- **Michael J Gomez**    mgomez@frandzel.com, dmoore@frandzel.com

- **Everett L Green**    everett.l.green@usdoj.gov

- **Garrick A Hollander**    ghollander@wghlawyers.com,
  jmartinez@wghlawyers.com;svillegas@wghlawyers.com

- **Eve H. Karasik**    ehk@lnbyg.com

- **Michael S Myers**    myersm@ballardspahr.com,
  BKTDocket_West@ballardspahr.com;PHXLitLAAs@ballardspahr.com

- **Daniel H Reiss**    dhr@lnbyb.com, dhr@ecf.inforuptcy.com

- **Cameron C Ridley**    Cameron.Ridley@usdoj.gov

- **Joseph M Rothberg**    jmr@lnbyg.com

- **Matthew J Stockl**    mstockl@wghlawyers.com,
  jmartinez@wghlawyers.com;svillegas@wghlawyers.com

- **John N Tedford**    jtedford@DanningGill.com,
  danninggill@gmail.com;jtedford@ecf.courtdrive.com

- **Thomas Tysowsky**    thomas.tysowsky@bakermckenzie.com,
  carmen.ayala@bakermckenzie.com

- **United States Trustee (RS)**    ustpregion16.rs.ecf@usdoj.gov

- **Christopher K.S. Wong**    christopher.wong@afslaw.com, yvonne.li@arentfox.com

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                **F 9013-3.1.PROOF.SERVICE**

## 2. **SERVED BY U.S. MAIL**

## 20 LARGEST UNSECURED CREDITORS

Capital One
PO Box 30285
Salt Lake City, UT 84130-0285

Capital One Financial Corp
c/o Officer, Managing or General
Agent
1680 Capital One Drive
McLean, VA 22102-3491

Caliber Construction Inc
240 N. Orange Avenue
Brea, CA 92821

Caliber Construction Inc
c/o Anna M. Carno, Esq.
Carno Law Group
24031 El Toro Rd., Suite 260
Laguna Hills, CA 92653

Southern California Edison
P. O. Box 300
Rosemead, CA 91772

Shri Kartikeya Pharma
c/o Tara L. Blake, Esq.
Butler Snow, LLP
150 3rd Avenue South, Suite 1600
Nashville, TN 37201

Citistaff Solutions, Inc.
Attn: Legal Dept./Slater & Assoc.
c/o Charles C. Slater, Esq.
1111 W. Town & Country Rd., Suite
30
Orange, CA 92868

Amtech Ingredients
517 Adams Avenue
Albert Lea, MN 56007

AGPE Corp.
21715 The Trails Circle
Murrieta, CA 92562

AGPE Corp.
c/o Ariel Guizar, Agent for Service of
Process
21715 The Trails Circle
Murrieta, CA 92562

Saddle Ranch APG LLC
PO Box 51930
Los Angeles, CA 90051

Saddle Ranch APG LLC
c/o Daniel L. Webb, Agent for Service
of Process
100 Bayview Circle, Suite 310
Newport Beach, CA 92660

BRS Beyond Resource Solutions, Inc
1475 South State College Blvd Suite
116
Anaheim, CA 92806

BRS Beyond Resource Solutions, Inc.
c/o Clayton J. Hix, Esq.
Hill, Farrer & Burrill LLP
300 S. Grand Avenue, 37th Floor
Los Angeles, CA 90071

SouthWest ToyotaLift
PO Box 1070
3725 Nobel Ct.
Mira Loma, CA 91752
SERVED VIA NEF

J. Rettenmaier USA LP
16369 US 131 Highway
Schoolcraft, MI 49087

J. Rettenmaier USA LP
c/o Richard O. Cherry, Esq.
Miller Johnson
100 W. Michigan Ave., Suite 200
Kalamazoo, MI 49007

Mold Rite Plastics
PO Box 160
100 N. Field Drive
Lake Forest, IL 60045

Capitol Food Company
12836 Alondra Blvd
Cerritos, CA 90703

Gadot America Inc.
1 Meadow Road, Suite 205
Florida, NY 10921-1140

Allied Universal Security Services
(Corporate Headquarters West)
450 Exchange
Irvine, CA 92602

Stratum HR LLC
23052 Alicia Parkway, Suite H533
Mission Viejo, CA 92692

Stratum HR LLC
c/o 1505 Corporation 1108
Pacific Registered Agents, Inc.
Four Embarcadero Center, Ste. 1400
#85
San Francisco, CA 94111

Southern California Edison
c/o Cristina Limon, Agent for Service
of Process
2244 Walnut Grove Ave.
Rosemead, CA 91770

Servicon Systems, Inc.
3965 Landmark Street
Culver City, CA 90232

Servicon Systems, Inc.
c/o Nick Iezza, Esq.
Spiwak & Iezza
555 Marin St., Suite 140
Thousand Oaks, CA 91360

Custom Ingredients Inc
160 Calle Iglesia
San Clemente, CA 92672

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

Custom Ingredients Inc.
c/o Robert J. Danko, Esq.
Law Office of Robert J. Danko
31805 Temecula Parkway, #623
Temecula, CA  92592


Tay Ninh Tapioca Joint Stock
Company
Tan Binh Hamlet
Tay Ninh Province, VIETNAM

Shri Kartikeya Pharma
H. no. 5-5-36/15/A, Opp NCS
complex
Prashanti Nagar, IDA kukatpally
Hyderabad, Telangana 500072
INDIA

Tay Ninh Tapioca JSC
c/o Officer, Managing or General
Agent
CH1, Sky Center 5B Pho Quang
Street, Ward 2, Tan Binh District, Ho
Chi Minh City, VIETNAM

LS Link Co Ltd
Unit 208A 25/F Bank of America Twr
12 Harcourt Road
Central, Hong Kong

**SECURED CREDITORS**

Aramark Services, Inc.
ATTN: James Tarangelo, CEO
2400 Market St.
Philadelphia, PA  19103

Aramark Services, Inc.
c/o Michael S. Myers
Ballard Spahr
1 E. Washington St., Suite 2300
Phoenix, AZ  85004
SERVED VIA NEF

Suitable Staffing Solutions, Inc.
ATTN: Ramon Gonzalez, Agent for Service
801 W. Victoria St., Suite A-1
Compton, CA  90220

Suitable Staffing Solutions, Inc.
c/o Marshall J. August
Frandzel Robins Bloom & Csato, L.C.
1000 Wilshire Blvd., 19th Floor
Los Angeles, CA  90017
SERVED VIA NEF

Atos IT Solutions and Services, Inc.
ATTN: Dave Seybold, CEO
4851 Regent Blvd.
Irving, TX  75063

Atos IT Solutions and Services, Inc.
c/o Paul J. Keenan, Jr.
Baker & McKenzie LLP
1900 N. Pearl St., Suite 1500
Dallas, TX  75201
SERVED VIA NEF

Sharon and Odelya Hoffman
c/o Better Nutritionals, LLC
3390 Horseless Carriage Dr.
Norco, CA 92860

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                          **F 9013-3.1.PROOF.SERVICE**